E-FILED
Thursday, 04 February, 2010  09:46:17 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-30115 |
| | ) | |
| THOMAS A. YARRINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant Thomas A. Yarrington's Post-Trial Motions (Motions) (d/e 38).  The Government has filed Government's Response in Opposition to Defendant's Post-Trial Motion (d/e 39).  This matter is fully briefed and ripe for adjudication.  For the reasons discussed below, Defendant's Motions are denied.

### FACTS

On January 7, 2010, after a three-day trial, a jury convicted Defendant of one count of knowingly and intentionally possessing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Verdict (d/e 31).

Jury selection in Defendant's case began on January 5, 2010.  Minute

Entry of January 5, 2010.  Juror 26, Michelle Hudson, was one of the individuals on the panel.  During voir dire, Hudson, a black female, stated that she recognized the names of two of Defendant's potential witnesses. The first potential witness was an individual with whom Hudson had attended high school; the second potential witness was Digoola Addison; Hudson had worked for Addison as a certified nursing assistant.  The Government exercised one of its peremptory challenges to strike Hudson from the panel.  Defendant, who is black, argued that the Government was striking Hudson because of her race.  The Government responded that the decision was not motivated by race, but by the fact that Hudson knew two potential witnesses.  The Court overruled Defendant's objection, and struck Hudson from the panel.

After the jury was sworn and attorneys for both sides gave opening statements, the Government presented its case in chief to the jury.  The evidence presented showed that on May 22, 2008, federal and Sangamon County, Illinois, drug enforcement agents were doing surveillance of the apartment Defendant shared with his girlfriend, Melody Pryor, in Springfield, Illinois.  They had received information from an informant that Defendant was involved in a drug distribution operation with another

individual, Jeremy Wallace.  On that day, agents observed Wallace's vehicle pull up to the apartment and leave a short while later.[1]

Defendant then left the premises in his own vehicle; agents stopped him and explained that they were investigating him and his residence for illegal drug activity.  Defendant consented to a search of his truck, but did not consent to a search of the apartment, since Pryor's name was on the lease.  Agents found nothing illegal in Defendant's truck.  Defendant accompanied agents to the Sangamon County Jail, where he signed a waiver of his <u>Miranda</u> rights and agreed to cooperate to avoid getting Pryor into trouble.  Defendant told special agent Kevin Rollins of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) that Defendant was holding cocaine for Wallace, who would pay Defendant $300 an ounce for packaging the cocaine for distribution.  Defendant stated that he would cut the cocaine with inositol powder, and that he believed there was about $12,000 in cash in the apartment, some of which came from his music and modeling endeavors, and some of which came from the sale of drugs.

---

[1]Agents later engaged Wallace in a traffic stop.  Wallace fled the scene and hid in the bathroom of the Friendly Chevrolet car dealership, where he worked.  Agents found him there moments later with his pants down, the toilet flushing, and white residue on his clothing.

Defendant told Rollins that his fingerprints would be on the bags of cocaine, and that he had recently purchased a digital scale.

Meanwhile, other agents had arrived at the apartment Defendant shared with Pryor.  Pryor gave consent to the agents to search the apartment.  In the closet of Defendant's music studio on the apartment's second floor, agents found four separate plastic bags of cocaine, totaling nearly one-third of a kilogram.  Laboratory testing later revealed that Defendant's fingerprints were on the bag containing the largest amount of cocaine.  They also found a digital scale, a cardboard box full of plastic bags, and a jar of inositol powder, which agents testified is commonly used to "cut," or dilute, cocaine powder as it is being packaged for distribution. Defendant testified that the nearly thirty pairs of shoes in the closet were his, and that he owned the music equipment that filled the room.  Agents also searched the bedroom, where they found nearly $15,000 in cash stuffed into a satchel inside of a Nike shoe box under the bed.

Thomas Summerlin testified on behalf of the Government, pursuant to a cooperation agreement.  Summerlin stated that he had purchased cocaine from the Defendant on a number of occasions and that he had bought cocaine from Wallace on other occasions.  Cellular telephone records

revealed that between August 2007 and April 2008, Summerlin and Defendant called each other 144 times, with most calls lasting for one minute or less.

After the Court denied Defendant's oral motion for directed finding of acquittal, Defendant presented evidence.  His evidence showed that he was a musician who owned several pieces of specialized music equipment that he used to make "beats," or background music tracks, which he sometimes sold for money.  Defendant stated that he would occasionally rent out his music studio to others.  He also testified that he earned money from modeling, and that in order to stay in shape he would drink protein shakes made from whey powder, which he would measure out by using the digital scale found in the bedroom.  Defendant also testified that he worked out frequently to stay in shape for his modeling career, and he had hurt his knee doing so.  He stated, and other witnesses corroborated, that he would often ice his knee with ice cubes he placed in a plastic bag.  Defendant testified that when he was finished icing his knee, he would throw away the plastic bag.

At the close of evidence, Defendant moved for a directed verdict, and the Court denied the motion.  Both parties presented closing arguments,

and the Court instructed the jury. The jury deliberated, and found Defendant guilty. Defendant timely filed his Motion, and asks the Court either to grant him a new trial, or to vacate the guilty verdict and enter a judgment of acquittal. He presents six arguments for relief, which the Court addresses in turn.

## I.    OBJECTIONS MADE DURING TRIAL

Defendant first renews all objections made at trial. For the reasons stated of record at the time, the Court's rulings on these objections were correct. Therefore, the Court rejects Defendant's argument in this respect.

## II.    PRE-TRIAL AND TRIAL MOTIONS

Defendant next renews all motions made before trial and during trial. Again, for the reasons stated of record at the time, the Court's rulings on these motions were correct. Accordingly, the Court denies Defendant's request for relief on this basis.

## III.    INSUFFICIENT EVIDENCE

Defendant's third argument is that the evidence adduced at trial was insufficient to convict him beyond a reasonable doubt. The Government counters that any rational trier of fact could have convicted Defendant of the charged offense based on the evidence at trial.

A defendant's challenge to the sufficiency of the evidence used to convict him is an "uphill battle."  United States v. Sanchez, 251 F.3d 598, 601 (7th Cir. 2001); see United States v. Hicks, 368 F.3d 801, 804 (7th Cir. 2004) (describing standard of review for sufficiency of the evidence challenge as "daunting").  The trial court evaluates the evidence adduced at trial in the light most favorable to the prosecution, and draws all inferences in the prosecution's favor.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Johnson v. Bett, 349 F.3d 1030, 1034 (7th Cir. 2003); see Russo v. Hulick, 2008 WL 3876087, at * 19 (C.D. Ill. Aug. 18, 2008).  The court will uphold the jury's verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319; Hicks, 368 F.3d at 805.

The evidence presented at trial demonstrates that Defendant's challenge is without merit.  Federal agents found nearly one-third of a kilogram of cocaine powder in plastic zip-top bags in Defendant's closet; one of the bags had Defendant's fingerprints on it.  Law enforcement personnel also found a cardboard box containing plastic baggies, a digital scale, and inositol powder in Defendant's closet.  Expert testimony revealed that all three of these items are commonly used by drug dealers in the distribution

of cocaine.   Nearly $15,000 in cash was found in a duffel bag under Defendant's bed; the Government's expert testified that hoarding large amounts of cash is consistent with involvement in a drug operation. Defendant told federal agents that he was packaging drugs for Wallace, and that they would find his fingerprints on the plastic bags of cocaine in the apartment.   Summerlin testified that he had purchased cocaine from Defendant on a number of occasions.

Based on these facts, a rational trier of fact could find Defendant guilty beyond a reasonable doubt of the offense of knowingly possessing cocaine.   Therefore, the Court rejects Defendant's sufficiency of the evidence challenge.

IV.   *BATSON* CHALLENGE

Defendant next argues that the Court erred in allowing the Government to exercise one of its peremptory challenges to dismiss Michelle Hudson, an African American, from the panel because the Government did not produce a "plausible and sufficient race neutral reason" to excuse Hudson.  Post-Trial Motions, ¶ 5.

In Batson v. Kentucky, the U.S. Supreme Court held that the state violates a defendant's equal protection rights when it uses its peremptory

challenges to exclude jurors on the basis of race.   <u>Batson</u>, 476 U.S. 79 (1986); <u>United States v. McMath</u>, 559 F.3d 657, 663 (7th Cir. 2009).  After the defendant raises a <u>Batson</u> challenge, a three-step inquiry ensues:

> (1) the defendant must establish a prima facie case that a peremptory challenge was used to exclude a juror on the basis of race; (2) once the defendant establishes the prima facie case, the prosecutor must provide a race-neutral explanation for the exclusion; and (3) the court must determine whether the objecting party has carried his burden to prove discrimination.

<u>McMath</u>, 559 F.3d at 663.

In this case, the Court followed this procedure.  After the Government indicated it wished to exercise a peremptory challenge to excuse Hudson from the jury, Defendant's counsel objected.  Counsel noted that she was one of three black individuals in the whole jury pool, and the only one to make it into the jury box.  The Government then articulated its reasons for dismissing Hudson: she knew, and had formerly been supervised at work by, a witness who would testify on Defendant's behalf; in addition Hudson had gone to high school with another defense witness, and Hudson's daughter's last name was known to law enforcement.  These personal and professional relationships with potential defense witnesses called into question Hudson's ability to be a fair and impartial juror.  The Court found that there were

race-neutral reasons for challenging Hudson, and it overruled Defendant's objection.

There is no evidence that Defendant's equal protection rights were violated, and therefore, the Court denies Defendant's Motion with respect to his <u>Batson</u> challenge.

V.   <u>IMPROPER TESTIMONY</u>

Defendant next argues that the Court erred in allowing Agent Rollins to read into evidence portions of his notes taken during his interview of Summerlin. Defendant claims that this alleged error "improperly bolstered" Rollins' testimony. <u>Post-Trial Motions</u>, ¶ 6. The Government counters that allowing Rollins to read part of his report was proper because he was providing context for a sentence of the report that the Defendant's counsel had taken out of context during the cross examination of Rollins and Summerlin.

Rollins' report of his interview with Summerlin covered Summerlin's involvement with Wallace and Defendant chronologically. The report stated that at the beginning of Summerlin's involvement with the men, Summerlin had purchased cocaine only from Wallace, but that he later purchased it from both Wallace and the Defendant. Defendant's attorney

10

attempted to characterize the report as stating that Wallace was the only individual from whom Summerlin had purchased cocaine. The Government asked Rollins to read portions of his report to place that statement in context. Defense counsel objected that such testimony would be improper, and the Court held a sidebar on the issue.

At sidebar, Defendant's counsel argued that it was improper to have Rollins read the report because the jury would put undue emphasis on it. The Government responded that the time-line issue had not been fairly addressed, and the Court noted that Defendant's counsel had brought up the report in the first place. Over Defendant's objection, the Court allowed the witness to read five paragraphs of the report from his September 8, 2008, interview with Summerlin. After Rollins read these paragraphs, the Court advised the jury that they were not being offered to prove the truth of the statements, but merely to demonstrate what Rollins had reported about his interview with Summerlin, since both parties had focused on the report's contents. The Court refused to admit the report itself as an exhibit.

Federal Rule of Evidence 106 states that when:

a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded

statement which ought in fairness to be considered contemporaneously with it.

Fed. R. Evid. 106.  Commonly referred to as the "rule of completeness," this provision seeks to avoid misleading or confusing the jury, and to promote a "fair and impartial understanding of the evidence."  United States v. Li, 55 F.3d 325, 330 (7th Cir. 1995); see United State v. Rubin, 609 F.2d 51, 63 (2nd Cir. 1979).

The Court's decision to allow Rollins to read certain portions of his report to the jury was correct.  Defendant's counsel presented a portion of Rollins' report, and the Government was entitled to introduce other portions of the report so that the jury would not have a misleading impression of the reported statements Summerlin made to Rollins during the September 2008 interview.  Therefore, the Court denies Defendant's Motion on this claim.

VI.   <u>MOTION FOR DIRECTED FINDING</u>

Defendant's last argument is that the Court erred in denying the oral motion for directed finding of acquittal that his counsel made at the close of the Government's case, and then renewed at the close of evidence.

As discussed above, there was more than sufficient evidence for a

reasonable jury to convict Defendant of the charge in the Indictment.  For the reasons given at trial, the Court stands by its initial rulings, and denies Defendant's request for relief in this respect.

<u>CONCLUSION</u>

THEREFORE, for the reasons articulated above, Defendant's Post-Trial Motions (d/e 38) are DENIED.  Sentencing remains set for May 17, 2010, at 2:30 p.m.

IT IS THEREFORE SO ORDERED.

ENTER:   February 3, 2010

FOR THE COURT:

<u>          s/  Jeanne E. Scott          </u>
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE